The SUPERIOR OIL COMPANY, Appellant,

v.

BOARD OF TRUSTEES OF the MAGNOLIA INDEPENDENT SCHOOL DISTRICT et al., Appellees.

No. 4143.

Court of Civil Appeals of Texas.

Eastland.

Dec. 2, 1966.

Rehearing Denied Jan. 13, 1967.

Williams, Lee & Lee, Pat F. Timmons, Houston, for appellant.

McClain & Harrell, Conroe, E. G. Aycock, Ft. Worth, for appellees.

GRISSOM, Chief Justice.

This is an appeal from the judgments in two cases, in effect consolidated on appeal, in favor of the School District et al. against the Superior Oil Company. Superior alleged that the Magnolia Independent School District and its board of equalization on September 10th, 1962, arbitrarily discriminated against it in fixing the value of its property and unlawfully levied an excessive amount of taxes against it. Superior sought to enjoin the school district from attempting to collect taxes based upon such alleged unlawful discrimination and valuation and a mandatory injunction requiring the School District to accept in full payment the taxes due an amount theretofore paid by Superior, which amount was based upon its rendition.

Superior alleged that after January 1, 1962, it filed with the tax assessor its rendition and inventory for said year of all its properties within the district, that said rendition showed 37% of the value of all its properties as of January 1, 1962, showing the value of all its property was $4,095,-837 but that its value was actually $4,029,-100.00; that prior to 1961 said district had used 37% of the value of its property on which to compute taxes at the rate fixed by the board; that Superior received notice that the board of equalization would meet and it would be heard; that on September 10, 1962, Superior appeared before said board and presented conclusive and undisputed evidence of the value of its property in said district on January 1, 1962; that said evidence established that the value of its property was $4,029,100.00; that no other evidence was presented but that said board, without evidence raising an issue of fact rejected and disregarded such only evidence before it, and fixed the value of Superior's property at $6,488,700.00 or $2,-459,600.00 more than the value so established. Superior alleged that the only evidence before the board on September 10th was, as a matter of law, final and fixed its value for 1962.

Superior alleged that said action by the first board (Sept. 10th) was final and that a subsequent attempt of said board to rescind its actions was void and did not affect its finality; that Superior had in another suit filed against said school district, its trustees and the original board of equalization, asserted its right to pay taxes on a $4,029,100.00 valuation equalized at 40%, which amounted to $1,611,640.00 and the taxes thereon to $24,174.60, which had been paid into the court and by it paid to said school district.

Superior alleged that the defendants' answer in the first case affirmatively recited that a board of equalization for 1962 was created by the trustees on November 6, 1962; that plaintiff was notified to appear before said board on November 23, 1962 to show whether the assessed value of its properties in the district should not be raised; that Superior appeared before that

board at said time and protested the validity of the proceedings, introduced evidence and cross-examined a witness for that board and on December 13, 1962, it was notified that said board had fixed the actual cash market value of its properties at $6,159,180.00 and an assessed value, equalized at 40%, of $2,463,670.00; that said new board of equalization in thus fixing the value of Superior's property acted without authority because the first board at its September 10, 1962, hearing finally fixed Superior's property value and taxes and same was not subject to rescission but a final adjudication establishing same.

Superior alleged that no evidence was offered other than that of its witnesses, in that, defendants' valuation witness admitted that he made no proper appraisal of plaintiff's property as of January 1, 1962, nor had he done so for four or five years, nor did he have any knowledge of plaintiff's current operating costs; that he ignored plaintiff's gas price; that he did not take into account the existing law on the proper effect of gas price on in-place gas; that while the valuation shown by the evidence on the first hearing, September 10th, was accurate and was based upon evidence of the true actual gas values, said later board ignored same and gave effect to improper and uncertain values and methods of arriving thereat.

Superior alleged that said school district employed its own appraisers; that they had placed a value on land in said district at not less than $130.00 per acre; that the school district's plan of establishing actual cash market value and assessed value was void; that it was neither equal nor uniform, in that, the necessary results of the later board's action was to equalize Superior's property at 40% of its actual cash market value and all other land in the district at approximately 24% of its value; that the plan of the district so adopted by its first board of equalization on September 10th was void, as a matter of law.

Superior alleged that the increased valuation placed upon its property by the later board for 1962 was excessive and discriminatory and said increased valuations and the method employed by it denied Superior the rights guaranteed to it by the Constitution of the United States and the laws of Texas to have its value determined equally and uniformly with other taxpayers in the county, and upon the evidence introduced before said board. Substantially the same allegations were contained in the first suit concerning the action of the school district in fixing the value and assessing the taxes of Superior.

The defendants, among other things, denied that the action of the board of equalization which finally fixed the value of plaintiff's property and the tax thereon herein complained of placed an arbitrary value upon Superior's property. Defendants alleged that on November 2, 1962, Bradbury, Qualine and Graves, sitting as a board of equalization, by resolution, rescinded in toto and declared of no force all prior acts of its board of equalization, that they resigned as members of said board on November 6, 1962; that a new board of equalization was appointed and met on November 23, 1962, to hear evidence of the value of Superior's property; that it heard such evidence and on November 30, 1962, that said new board re-convened and heard evidence as to the market value of Superior's property within said district; that, based upon the evidence adduced before that board as to the cash market value of Superior's property within the district, it faithfully endeavored to equalize all property within said district subject to taxation and arrive at its true market value, and assessed said properties at 40% thereof.

In a trial to the court, it was decreed that Superior Oil Company take nothing and it has appealed. So far as we are here concerned, the same action and the same disposition was made in each of said cases. Superior in its able brief says in effect that its suit was to enjoin appellees from putting into effect an arbitrary plan of taxation and

to enjoin collection of more than $14,000.00 in taxes, illegally levied against it; that by its first suit, presented in court on September 25, 1962, it sought (1) to enjoin appellees from arbitrarily assessing appellant's property at $2,459,600 in excess of its value as established by the undisputed and only evidence heard by the board of equalization on September 10, 1962; (2) to enjoin appellees from putting into effect their unlawful, discriminatory plan to assess Superior's property at 40% of its market value while the land in the district at 40% of the arbitrary valuation of $75.00 per acre, instead of at its actual value of, at least, $130.00 per acre, established by the undisputed evidence and (3) to prevent appellees from putting into effect their arbitrary and unlawful assessment plan without equalizing land in classes as required by statute.

Superior says that, after the September 10th hearing and before the first suit was filed, the tax rolls for the district based upon that hearing had been made up, except as to some tabulations, but not approved by the board; that when such first suit was filed appellees stated to the court that it would not be necessary to issue restraining orders or citations because it had rescinded all of its acts and submitted its resignation, which had been accepted and approved and a new board appointed.

Superior says that in its second suit presented in the trial court on January 31, 1963, following the first one presented on September 25, 1962, it pleaded substantially as in the first that the board at its September 10, 1962 hearing in fixing the value of Superior's property at $2,459,600 in excess of the value established by the undisputed evidence, arbitrarily disregarded the undisputed evidence but sought to escape the finality thereof by attempting to rescind and annul the legal effect of such evidence and its September hearing; that the November 1, 1962 hearing, called by the second board, could not set aside the valuation of Superior's property established by the undisputed evidence at the hearing before

the first board on September 10th, but, if the second board could legally fix the value of said property, it was illegally and arbitrarily fixed at $2,463,670 in excess of its actual value under all the evidence; that appellees were planning to assess the land without equalizing it in three classes; that they were attempting to put into effect an illegal and discriminatory plan to assess appellant's property at 40% of $75.00 per acre instead of 40% of its fair market value of $130.00 per acre, which value was established by the uncontradicted evidence; that said second hearing was objected to by Superior because it had no authority to undo the value already established at the first hearing; that all questions as to value were at issue in the first suit, and that the parties in the first suit had agreed that the tax rolls would not be approved until the matters were heard and agreed upon.

Superior says that in the second hearing there was involved the mineral value of its gas dependent upon the sale price under its contract and the amount it was permitted to retain by the Federal Power Commission, being 14.5¢ and 9.5¢ Mcf, respectively.

Superior states its theory substantially as follows:

(1) That at the September 10, 1962 hearing before the first board the only and undisputed evidence established the value of Superior's property as a matter of law and that the board arbitrarily disregarded same and fixed a much higher value. In support thereof it cites Articles 7211, 7212; Wells Independent School District v. St. Louis Southwestern Railway Company, Tex.Civ. App., 324 S.W.2d 442; Republic Insurance Co. v. Highland Park Independent School District, 129 Tex. 55, 102 S.W.2d 184.

(2) That fixing the value of Superior's property in excess of the value established by the undisputed evidence at the September hearing was illegal and that the value so established is the value of its property for taxation. Citing Bexar County v. Humble Oil & Refining Co., Tex.Civ.App., 213 S.W. 2d 882, and Article 7206.

(3) That Superior under its first suit is entitled to enjoin appellees from carrying out their plan to assess Superior's property at the board's arbitrary and excessive value, rejecting the value established.

(4) That appellees unlawfully attempted to rescind the legal effect of the boards action of September 10th.

(5) The final valuation, upon undisputed evidence at the September 10th hearing, as a matter of law remains the value of appellant's property for tax purposes and the later attempt to enlarge its value was void.

(6) The appointment of the second board of equalization and its hearing fixing appellant's valuations was void and must be wholly disregarded.

Superior says, as the record shows, that it has already paid into court and the court, with its consent, has paid to the school district the taxes paid by Superior based upon its valuation, which it contends was fixed by the undisputed evidence on September 10th and that, therefore, the judgment in both cases should be reversed and the cases dismissed.

Superior says that, in the event this court should hold that the undisputed evidence at the September 10th hearing did not establish the value of Superior's property or that the board could legally annul the value so established and that the subsequent board legally held a hearing reassessing Superior's properties, then Superior presents the additional contentions, to-wit:

(8) The value of appellant's gas could not be determined by the contract price, which the Federal Power Commission had not approved and had prohibited appellant from retaining.

(9) As the Power Commission prohibited appellant from retaining more than 9.5¢ per Mcf for its gas, its taxable value could not be based on the higher contract price of 14.5¢ and 19.5¢, to which it legally had no title.

(10) That the testimony on which the board of equalization based its excessive valuation was so conjectural as to have no weight and, therefore, furnished no support for the value that the board placed on Superior's property.

In support of appellant's first 4 points, to the effect that valuation was conclusively established September 10th and could not be disregarded nor rescinded and that the attempt to rescind could not destroy the legal effect thereof, says in effect: (1) that appellant's inventory was not accepted by the tax assessor and appellant appeared before the board of equalization on September 10, 1962; that the board directed the assessor to assess all land at 40% of $75.00 per acre; (2) industrial improvements at 40% value and (3) oil and industrial properties at 40% of value; that it objected to the plan; that no witness testified in support of the value that the board of equalization placed on Superior's property; that the only and undisputed evidence was the following: that its witness, Bill Johnston, a petroleum engineer, testified that he evaluated appellant's properties in the school district; that the 100% value thereof was $4,029,100. An Industrial Appraiser, Mr. Lunsford, testified that his valuation of Superior's Lake Creek Unit at $333,120 more than Mr. Johnston's valuation was "based on the contract price", not the amount retained and that the commission permitted appellant to retain only 9.5¢ per Mcf.

Appellant argues that under Articles 7211 and 7212 that evidence is required to be heard to determine the value of the property; that boards of equalization shall increase or diminish valuations, shall call persons who shall testify with respect to value and that the court "after hearing the evidence shall fix the value of such property in accordance with the evidence so introduced and as provided in the preceding Article and their action in such case or cases shall be final."

Appellant says in its first suit that it rendered its property; that the board set the hearing for September 10, 1962; that appellant presented evidence of the value of its property; objected to the value fixed by the board; that thereafter the tax collector prepared and completed the tax rolls, except as to some tabulations; and appellant then filed the first suit not only to restrain collection of taxes but to enjoin completion of the tax rolls under the board's plan under which appellant's taxes would have been approximately $14,000.00 more than it would have based upon the value established by the undisputed evidence presented on September 10th. Appellant says that the valuation fixed by the board without any evidence was void; that it set the matter for hearing, listened to appellant's witnesses, called no witnesses of its own, arbitrarily fixed a value and adjourned, and that the board could not annul that which the law had made final; that the board could not undo the legal effect of evidence presented at the hearing on September 10th legally finally establishing the value of Superior's property.

In Wells Independent School District v. St. Louis Southwestern Railway Co., Tex. Civ.App., 324 S.W.2d 442, n. r. e., the railway company, after rendering its property, was notified by the board of equalization to attend a hearing of the board for the purpose of equalizing the company's values. It appeared and offered the only evidence, which was rejected. The higher value fixed by the board was protested. It was held that the increase caused it to suffer material injury. In this connection appellant stresses the fact that said railway company did not sue to enjoin the tax plan but to enjoin collection of taxes in excess of the amount tendered, while here the suits are to enjoin carrying out the illegal plan of taxation and to enjoin collection of the taxes. Superior says that in Republic Insurance Company v. Highland Park Independent School District, 129 Tex. 55, 102 S.W.2d 184, the company successfully sued to enjoin the school district from disregarding the value fixed by

the board and to make such value final. It asserts that the same rule applies if the board disregarded undisputed evidence because in both instances the board disregarded the values established at the tax hearing.

Superior completes its brief on said points with the argument that the September 10th hearing was final and the value of Superior's property was arbitrarily and illegally fixed contrary to the uncontradicted evidence at the September 10th hearing and, since appellant has paid the taxes due on its established value, that the judgment should be reversed and judgment rendered for appellant.

Superior's points 5, 6, and 7 are, in effect, that the court erred in failing to hold (5) that the district's plan to value the land at about 24% of its value, but to value appellant's property at 40% of its value was arbitrary and discriminatory and substantially injurious to appellant; (6) that such illegal plan would cause substantial injury to appellant and (7) that, to prevent arbitrary and unlawful discrimination, appellant's property should have been assessed at 24% of its value instead of 40%.

Superior says that the board's plan was to fix the value of the land at $75.00 per acre, assess it as 40% of such value, or $30.00 per acre; that the tax assessor testified that under that plan the Hamil 722 acres was assessed at $30.00 per acre, 40% of $75.00, although its market value was $130.00 per acre; that Smith's 43 acres was assessed at $30.00 per acre but the market value per acre was $180.00, and that the lowest value of land was $130.00 per acre, the highest being $500.00 per acre. Under the board's plan land was valued at only $75.00 per acre, and for tax purposes it was placed on the rolls at 40% of $75.00, to-wit, $30.00 per acre, instead of 40% of $130.00 or $52.00 per acre. Superior then proceeds with illustrations showing that (if its contentions are correct) that it has been hurt by the alleged action in so assessing its property. It says

that taxing other land in the district at 24% but Superior's at 40% of its value is discrimination, which substantially injures it and that such discrimination or scheme has been condemned. It cites Rowland v. Tyler, Tex.Com.App., 5 S.W.2d 756; State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076; Wells Independent School District v. St. Louis Southwestern Railway Co., Tex.Civ.App., 324 S.W.2d 422, n. r. e.; Willis v. State, Tex.Civ.App., 142 S.W.2d 385. It contends the board's plan was to value all land at $75.00 per acre, regardless of value, and to place it on the rolls at $30.00, being 40% of the $75.00 valuation, while the undisputed evidence shows that the land in the district was worth from $140.00 to $180.00, generally, and none less than $130.00 per acre, and instead of taking 40% of the value of the lands they let $130.00 minus $75.00 escape all taxation yet appellant's property was taxed at 40% of its full value; that, by disregarding the September 10th undisputed evidence, the board thus unlawfully fixed the value of appellant's property.

In subsequent points appellant contends, in effect, that appellees' plan was void also because, the improved lands were not divided into three classes; that the value of appellant's mineral property cannot be determined by the contract price of its gas in excess of the amount the commission permits it to retain. Of course, we agree with such abstract proposition. Appellant's tenth point is that the court erred in failing to hold that appellant's contract price of 14.5¢ and 19.5¢ per Mcf for gas, which contract price has been suspended by the commission cannot be used to determine the value thereof because the Federal Power Commission rejected such price and permitted appellant to retain only 9.5¢ per Mcf for gas. With reference to this general contention about the board's fixing the price of appellant's gas by its contract price and the amount the commission permitted it to retain, the contract price does not fix the value of the gas, neither does the present percent that the Power Commission permits appellant to retain, but both may be considered in fixing the value thereof.

Appellant's 11th and 12th points get to the gist of this contest. The 11th point is that the court erred in failing to hold that the hearing before the second board of equalization was void and that it could not fix the value of appellant's property, which had been established by undisputed evidence at the hearing before the first board on November 10th, and (12) that the court erred in failing to hold there was no substantial evidence to sustain the value of appellant's property as fixed by the second board.

■ In the beginning of our consideration of this case we are faced with the contention of appellees that appellant's brief assumes that proof was made in the district court of the facts mentioned, whereas, the record shows that no facts were proved there. Appellees say that Superior's exhibits were offered expressly and solely for the purpose of showing what transpired before the boards, not as proof of facts stated therein, nor of the accuracy of the testimony transcribed there; that in the first case it was agreed that transcription of the proceedings before the first board were accurate but that they were not offered as proof of the facts which they purported to show but merely to show what occurred before that board; that the statement of facts in the second case and the transcript of the testimony before the second board was offered in evidence for the limited purpose of showing what transpired before that board but, expressly, not to show that the evidence presented before that board was true; that it was agreed that it was offered for the limited purpose of showing only what occurred before such board, rather than as original evidence before the trial court and, therefore, there was no evidence of the facts presented to the trial court and there was no evidence of values or plans; that the statement of facts in the first case shows there were three hearings held by boards of equalization for 1962 and the only two transcripts offered do not include the proceedings be-

fore the board on November 30th and November 23rd. Wherefore, appellees insist that Superior's claim that proof was made in the trial court that appellees were attempting to put into effect an illegal and discriminatory plan to assess its property at 40% of its fair cash market value while assessing land generally at 40% of $75.00 per acre, (appellant claiming that such land had a market value of $130.00 per acre) is not supported by the record, nor by any proof in the trial court and that Superior's statement of the nature and results of the suits is not supported by the record. Appellees say that, at most, these suits present, merely the question of whether the action of the board on September 10th rescinding all actions was valid and there being no proof in the trial court as to values of any property or of a discriminatory plan, briefing in connection with established values is ineffective, not supported by the record and cannot furnish a predicate for the relief sought by Superior. The school district says the case has been briefed by appellant as if there had been a full trial upon the merits in the District Court while the record shows the contrary; in the first case the record consists solely of a transcript of the testimony of appellees' tax assessor identifying appellant's rendition for 1962 and as to what was done in connection with such renditions by the board and that such record shows it was not established in the trial court that there was any change between the assessed valuation tentatively fixed by the first board on September 10th and the values finally fixed by the last board after the November 23rd hearing; that there was also included in said record a copy of appellant's rendition, proceedings before the boards, which, as above noted, were admitted only for the purpose of showing what transpired before the boards not for the purpose of showing the facts or that any of the testimony submitted was accurate, and the order of the board entered on November 2nd rescinding all previous orders of the first board of equalization, together with the resignation of the members of that board; acceptance of such resignations and some preliminary activities

of the succeeding board on November 23rd; that the record in the second case, similarly, shows no testimony as to facts in the trial court, but merely a transcript of the testimony heard by the board at its meeting on November 23rd; letters reflecting the action of the board fixing the values of appellant's property and Superior's motion for a summary judgment, defendants' answer and the order of the court overruling said motion. We think such contentions of the appellees are correct and controlling, must be sustained and the trial court's judgment affirmed for said reasons.

However, the school district, as it says, out of an excess of caution, proceeds to brief its case on the theory that even if Superior had submitted the facts in the trial court and adduced the evidence claimed by it to be shown by the record, that nevertheless, the judgment should be affirmed. We will proceed to discuss in some detail appellant's contentions in support of its last mentioned conclusion. Without stating appellees' counterpoints in detail we shall discuss, generally, their reply to Superior's theory. Appellees contend (1) that rescinding its actions at the September 10th hearing and resignation of its members was lawful; (2) that the action of a later board in finally fixing the taxable value of appellant's properties based upon evidence then presented was lawful; (3) appellant failed to produce any evidence in the trial court showing any plan of appellees to arbitrarily value appellant's property and therefore, appellant was not entitled to the relief prayed for, (4) that the first board's tentative action being under attack, it lawfully rescinded and set aside its action fixing the value of Superior's property and (5) the final valuation thereof, based upon evidence heard by the later board, was valid; (6) that the first board, having rescinded all its actions and its members having resigned, the board of trustees of the district were authorized to appoint a new board and that (7), appellant having failed to pay the taxes based upon values thus fixed, the judgments in both cases should be affirmed.

Appellees present a reply to appellant's alternative theory (8) to the effect that the value of Superior's property for tax purposes was lawfully based upon evidence of the cash market value and proper assessable value of such property, rather than upon the contract price for appellant's gas, same being merely one of the factors there considered in fixing market value; (9) that the taxable value of appellant's property was based upon evidence of its cash market value, which included merely as an element thereof the contract price for its gas, and (10) that the testimony presented to the last board, upon which it based its final action, was submitted by a qualified expert, agreed to be qualified, and that said board could rely upon his testimony in fixing the values in question.

 As stated, we are of the opinion that the judgment should be sustained because there was no evidence of an unlawful plan to tax appellant's property. The transcripts of the proceedings before the boards were not introduced as evidence of the facts essential to appellant's recovery but were expressly limited to showing what happened before the boards. "Generally, an administrative agency may rescind its action on a matter that has not become final." 1 Tex. Jur.2d Sec. 30, Page 671. It was so held by our Supreme Court in South Taylor County Independent School District v. Winters Independent School District, 151 Tex. 330, 249 S.W.2d 1010, 1012. It was stated to be the law in 73 C.J.S. Public Administrative Bodies and Procedure § 158, at page 495.

 The board of equalization's order of November 10th, fixing the value of appellant's property was lawfully set aside. The later boards' actions were not shown to be invalid. The transcript of proceedings before the boards of equalization did not constitute evidence in the trial court capable of showing the facts essential to appellant's recovery. The judgment is affirmed.