## State of Texas et al v. H. M. Houser.

No. 7729. Decided December 3, 1941.
(156 S. W., 2d Series, 968.)

*Elisha Myers, H. C. Ellis* and *Ben F. Mooring,* all of Paris, for the plaintiffs in error.

In a municipal corporation operating under a special charter, a board of equalization that is charged with the duties of equalizing and fixing the value of property within its bounds is a quasi judicial tribune, whose decision is final, unless appeal is properly taken to a board of revision, and when the owner does not appeal from such ruling or valuation he is estopped to deny that the valuation placed upon said property is a fair assessment of same. City of Wichita Falls v. Taxman Refining Co., 74 S. W. (2d) 524; State v. Richardson, 126 Texas 11, 84 S. W. (2d) 1076; French Ind. Sch. Dist. v. Howth, 134 Texas 211, 134 S. W. (2d) 1036.

*R. E. Eubank,* of Paris, for defendant in error.

The finding of the trial court that the valuation of defendant property was arbitrary and excessive is fully and amply justified by the evidence. Town of Pleasanton v. Vance, 277 S. W. 89; Union Ind. Sch. Dist. v. Sawyer, 259 S. W. 637.

Mr. JUSTICE SHARP delivered the opinion of the Court.

This is a suit by the State of Texas on its own behalf and for the County of Lamar, and by impleaded defendants City of Paris and the Paris Independent School District, against H. M. Houser, for delinquent taxes and for foreclosure of a tax lien on certain property owned by Houser in the City of Paris. It was alleged that the taxes were due the State, the County, and the School District for the years 1935, 1936, and 1937, and that the taxes were due the City of Paris for the years 1937 and 1938. In a trial before the court without a jury the court

gave judgment for Houser, declaring that the assessments of each of the taxing units on Houser's property for the years involved were null and void; the judgment being without prejudice to the rights of the taxing units to reassess the property. The basis of the judgment of the trial court decreeing that the assessments were void was that the valuation of the property of Houser at such an excessive amount beyond its market value constituted an arbitrary and unreasonable valuation. The Court of Civil Appeals affirmed the judgment of the trial court. 137 S. W. (2d) 800. This Court granted writs of error filed on behalf of the State of Texas and the other taxing units.

We shall designate the State of Texas, the County of Lamar, the City of Paris, and the Paris Independent School District as plaintiffs, and H. M. Houser as defendant.

Counsel for the parties to this suit agreed that Houser owned the property in question; that such property was properly described; that the property was within the limits of each of the taxing units; that the taxes had been duly levied; that no part of the taxes had been paid; that the taxing unit for the county also acted for the Paris Independent School District, and the board of equalization for the county also acted for the school district; and that "all prerequisites and requirements of law to be taken by each of the taxing units, as a condition precedent to the validity of said taxes and bringing into existence of a tax lien on the property involved in this cause, have been taken and performed within the time and in the manner required by law, except the valuation placed on said property by taxing authorities."

The judgments of the trial court and Court of Civil Appeals declared that the asssesments made were void because the property of defendant was assessed at an excessive valuation; and plaintiffs assail such judgments on the ground that they are unsupported by the evidence. The burden rested upon the defendant to allege and prove that the methods adopted by the boards of equalization in arriving at the valuations fixed were illegal or fraudulent. If the defendant failed to meet this burden, the actions of the board of equalization will stand.

There was no proof offered by Houser that the property involved was assessed at a higher valuation than the surround-

ing property, and there was no proof that the tax assessors or the respective boards of equalization were actuated by a feeling of malice or fraud. There is no evidence to warrant a finding that any fraudulent practice was resorted to or that any unlawful method was adopted. There was no proof that the proceedings before the tax assessors or before the respective boards of equalization were irregular or unlawful. We have carefully examined the record, and can find no evidence that the boards of equalization refused to hear Houser or any of his evidence.

Here we have a case in which the valuation placed on the property by the assessors and the boards of equalization was greater than the value placed thereon by the owner. The facts are as follows: The City of Paris assessed the property at a valuation of $4,000.00 in 1937. This was the figure at which Houser himself under oath had rendered the property to the City for taxation. In 1938 Houser rendered the property to the City at a valuation of $3,500.00. The figure was raised to $4,000.00 by the City Board of Equalization. Houser appeared before the board, either in answer to a notice from the board or voluntarily, and protested that the valuation was too high, and told the members of the board that the property had run down in value. He further testified that the City offered no evidence before the board as to the value of the property; and the City did not introduce proof to the contrary in the trial in the district court. Houser testified that he did not appeal to the City Board of Revision, as he had a right to do under the city charter. There is no testimony that Houser ever rendered his property to the County, to the State, or to the School District. Those units assessed his property at $4,500.00 for the years 1935 and 1936, and at $4,000.00 for the year 1937. There is no proof that the property was worth less in 1935 and 1936 than it was when Houser rendered it for taxation in 1937 at $4,000.00.

Houser testified that he went before the County Board of Equalization each year and protested the high valuation, and told them that the property was run down and asked for a reduction in the valuation. He brought no other proof before the board, and did nothing to attempt to set aside the valuation until this suit for delinquent taxes was filed. He offered in his pleadings to pay the portion of the taxes justly due, but on the trial he said he was not willing to pay anything because he had been sued. He testified that neither the County, nor

the State, nor the School District offered any evidence regarding the valuation before the boards of equalization; and these taxing units did not offer any proof in the district court to rebut this statement. On the trial in the district court Houser offered proof that he had purchased the property for $3,000.00, and that he had spent $500.00 or $600.00 in improving the property. In his pleadings he alleged that he had purchased the same property for $3,500.00. He offered the testimony of a real estate man that the property was worth $3,000.00. The taxing units offered no proof of the value of the property, and the trial judge found that the value of the property did not exceed $3,000.00 during any of the years involved here.

■ It is disclosed that defendant signed a rendition sheet to the City of Paris for the year 1937, in which his property was valued at $4,000.00; and in 1938 he rendered such property to the City for $3,500.00. This valuation placed on his property, in the absence of fraud, accident, or mistake, is binding on him, and he cannot later complain that said valuation was too high for those years. Hurley v. City of Waxahachie (Civ. App., writ refused), 75 S. W. (2d) 946; Ramey v. City of Tyler (Civ. App.), 45 S. W. (2d) 359; Mississippi Valley Life Ins. Co. v. City of El Paso (Civ. App.), 131 S. W. (2d) 191.

It was contended by Houser that the high valuation set by the taxing units was of itself evidence that such valuations were illegal. There can be no question that Houser owes some taxes for the years mentioned. He testified that he went before the boards of equalization to protest against the valuations of the property set by such boards, but he had made no genuine offer to pay any taxes for those years. Except his contention that the valuation of the property for taxation was excessive, no testimony was introduced tending to show that the boards of equalization acted in bad faith in fixing the amount of the taxes.

■ Our courts have repeatedly held that the decisions of taxing boards in the matter of valuations are quasi-judicial in nature; and, therefore, in the absence of fraud or other obvious violation of the law, such decisions are not subject to collateral attack. It has also been held that such valuations will not be set aside merely upon a showing that the same are in fact excessive. If a board fairly and honestly endeavors to fix a just valuation for taxing purposes, a mistake on its part under such circumstances is not subject to review by the courts. State et al v. Mallet Land & Cattle Co., Inc., 126 Texas 392,

88 S. W. (2d) 471; Texas & Pacific Ry. Co. v. City of El Paso, 126 Texas 86, 85 S. W. (2d), 245; Rowland v. City of Tyler (Com. App.), 5 S. W. (2d) 756; Druesdow v. Baker (Com. App.), 229 S. W. 493; Duck v. Peeler, 74 Texas 268, 11 S. W. 1111; State v. Chicago, R. I. & G. Ry. Co. (Com. App.), 263 S. W. 249; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; Simpkins v. City of Corsicana (Civ. App.), 86 S. W. (2d) 792. Of course, if a board adopts a method that is illegal, arbitrary, or fundamentally wrong, or if its valuation is grossly excessive; the decision of such board may be attacked and set aside. Texas & Pacific Ry. Co. v. City of El Paso, supra; Rowland v. City of Tyler, supra; Druesdow v. Baker, supra; Simpkins v. City of Corsicana, supra.

■ In our judgment, this record fails to show, as a matter of law, that the boards of equalization acted arbitrarily or fraudulently in fixing the valuation of this property for taxation. It is true that the trial court found a valuation of $3,000.00, but it is undisputed that Houser himself had placed a much higher valuation on this property during several of the years here involved. There is no contention that Houser was discriminated against as to valuation. At least, we think this record merely shows a difference in judgment or opinion between the boards of equalization and the court as to the valuation of Houser's property. Certainly a tax assessment cannot be set aside as being null and void merely because a court or jury differs with an equalization board as to valuation. On the contrary, it must be shown either that the board's valuation was arrived at by an arbitrary or unlawful method, or that the valuation fixed was itself unreasonable, fraudulent, or discriminatory. The mere showing by defendant that he protested the valuation set, and that the boards of equalization may have made an error of judgment in the valuation of his property, is not sufficient to overturn the actions of the boards of equalization. In view of the record, it cannot be held, as a matter of law, that the valuations fixed by the boards of equalization, when considered in connection with the valuations fixed by Houser, are so grossly excessive as to render the same void.

The judgments of the Court of Civil Appeals and of the trial court are both reversed, and this cause is remanded to the trial court with instructions to enter judgment for the different taxing units for the amount of taxes for the years

1935, 1936, 1937, and 1938 as claimed and prayed for by them in their pleadings.

Opinion delivered Decmeber 3, 1941.